fect of parties defendant was properly overruled. A defect of parties as ground of demurrer under subdivision 6 of section 488 of the Code of Civil Procedure means a nonjoinder, and not a misjoinder of parties. A complaint is not demurrable for too many parties defendant. Hall v. Gilman, 77 App. Div. 458, 79 N. Y. Supp. 303; Tew v. Wolfshon, 77 App. Div. 454, 79 N. Y. Supp. 286; Adams v. Slingerland, 87 App. Div. 312, 84 N. Y. Supp. 323.

In so far as the appeal is taken from "a paper purporting to be an interlocutory judgment," it is dismissed.

The order appealed from is reversed, and all proceedings had thereunder are vacated without costs to either party as against the other. All concur.

---

### KRAMER v. BARTH et al.

(Supreme Court, Appellate Term, First Department. January 13, 1913.)

Appeal from City Court of New York, Special Term.

Action by Mary Kramer against Max Barth and another. From an order denying defendants' motion to vacate and set aside execution, and compel plaintiff to enter an interlocutory judgment on demurrer, defendants appeal. Order reversed.

See, also, 139 N. Y. Supp. 341.

Argued January term 1913, before SEABURY, LEHMAN, and PAGE, JJ.

Max Schleimer, of New York City, for appellants.
Jacob W. Block, of New York City, for respondent.

PER CURIAM. It would have been the better practice to have moved to vacate the judgment, as well as the execution issued thereunder. For the reasons set forth in the appeal in this action decided herewith, this order will be reversed, with $10 costs and disbursements, and the motion granted.

---

### CZERWENY v. NATIONAL FIRE INS. CO. OF HARTFORD.

(Supreme Court, Appellate Term, First Department. January 9, 1913.)

1. INSURANCE (§ 164*)—POLICY—CONSTRUCTION—GOODS "HELD IN TRUST."
     Under a fire insurance policy on goods held "in trust," recovery could be had for the loss of matches stored with insured as a bailee for hire.
     [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 347–350; Dec. Dig. § 164.*
     For other definitions, see Words and Phrases, vol. 4, pp. 3273, 3274.]

2. INSURANCE (§ 624*)—ACTION ON POLICY—PARTIES.
     The assignee of the owner of matches stored with the insured as bailee for hire was the proper plaintiff in an action and under a trust clause of the policy for loss of the matches; the person for whose benefit a contract is made having the right to sue thereon, although not named therein.
     [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1557–1571; Dec. Dig. § 624.*]

3. INSURANCE (§ 579*)—ACTION ON POLICY—PARTIES—EFFECT OF SETTLEMENT.
     In the absence of waiver or estoppel, the plaintiff's rights in such case were not affected by a settlement between the insured and the insurance company with knowledge of the claim of plaintiff's assignor.
     [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1417, 1419; Dec. Dig. § 579.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

4. INSURANCE (§ 648*)—ACTION ON POLICY—EVIDENCE OF INSURED'S INTEN-
TION—COMPETENCY.

After H. J. bought certain merchandise from C., C. wrote, asking which of them should insure the merchandise, and H. J. replied for C. to do so. Thereupon C. took out insurance which was void by reason of his having parted with title. Thereafter a bailee for hire, with whom H. J. stored the merchandise, insured the contents of his warehouse under a policy containing a trust clause. After destruction of the merchandise by fire, H. J. assigned to C. his rights under the bailee's policy. *Held*, in an action by C. on the bailee's policy that evidence of the taking out of the void policy and of the preliminary correspondence was not competent to show that the bailee did not intend to insure this particular merchandise.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1669, 1676, 1677; Dec. Dig. § 648.*]

5. INSURANCE (§ 665*)—ACTION ON POLICY—EVIDENCE OF INSURED'S INTEN-
TION—PROBATIVE EFFECT.

The fact that a trust clause was inserted in an insurance policy covering the contents of a warehouse was strong probative evidence that the insured intended to insure another's merchandise, which was stored with him as a bailee for hire.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1707–1728; Dec. Dig. § 665.*]

6. INSURANCE (§ 146*)—POLICY—CONSTRUCTION.

The intention of the parties to an insurance contract, even though extraneous evidence is permissible, must primarily be sought in the instrument itself.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 292, 294–298; Dec. Dig. § 146.*]

7. INSURANCE (§ 559*)—PROOF OF LOSS—WAIVER.

An unqualified denial of liability under the trust clause of a fire insurance policy waived the proof of loss stipulated for by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1391, 1392; Dec. Dig. § 559.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Alfred Czerweny against the National Fire Insurance Company of Hartford. From judgment for plaintiff, defendant appeals. Affirmed upon the opinion below.

The following is the opinion of Judge Spiegelberg, in the trial court:

This action, which was submitted upon an agreed statement of facts, is brought by the plaintiff, as assignee of Herman Jedel, to recover upon a policy of insurance issued by the defendant to A. Jedel Company. Some time prior to March 9, 1910, Herman Jedel, who was doing business under the name of the Anglo-American Fireworks Company, was the owner of a quantity of matches which were deposited by him in a brick warehouse owned by A. Jedel Company at Newark, Del., under an arrangement with said company, whereby Herman Jedel agreed to pay to said company for storage at the rate of 10 cents per case. On April 2, 1910. A. Jedel Company took out insurance with seven fire insurance companies, among which was this defendant, for the aggregate sum of $25,000, $6,000 of which was to cover the machinery and $19,000 the stock. The policy issued by the defendant herein was for $5,000 to cover pro rata the two items mentioned. The clause relating to the insurance of the stock reads as follows: "On stock, materials and supplies made up and in process, their own or held in trust, on consignment, or sold but not removed, while contained in brick buildings * * * situate near Pennsylvania Railroad station, Newark, Delaware." The warehouse in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which the matches were stored is one of the buildings described in the policy. On May 11, 1910, the building in question, together with others and their contents, were destroyed by fire, and among the goods destroyed were the matches owned by Herman Jedel. The A. Jedel Company filed a proof of loss with the defendant and the other fire insurance companies without mentioning the matches which had been stored with it. Thereafter representatives of the defendant and the other fire insurance companies went to Newark, Del., for the purpose of ascertaining the loss. At the interviews which took place there "a knowledge of the existence of said matches upon said premises at the time of the fire, their approximate value, and the circumstances and conditions under which they were there contained and their destruction by the fire was imparted to the said representatives of the said insurance companies by the representatives of the A. Jedel Company." The latter, upon being questioned, stated that they did not claim that the matches were covered by the insurance policies, and that they had no interest therein, but that they were the property of other parties and were covered by insurance taken out specifically thereon at the instance of the persons interested in said matches. Thereafter the amount payable by the insurance companies was settled by agreement between them and the A. Jedel Company at the sum of $21,000, $6,000 to be payable on the machinery and the fixtures and $15,000 on the stock. Each company paid its proportionate share, leaving $4,000 of the total liability unpaid. The policies were thereupon canceled by consent. The proportionate share of the defendant of said $4,000 amounts to $800. The value of the matches at the time of the fire was $1,105, and the plaintiff seeks to recover herein from the defendant the proportionate share of its liability, to wit, $221.

[1] Applying the law to the facts herein, it seems clear that the A. Jedel Company was a bailee for hire of the matches owned by Herman Jedel, and that, under the so-called "trust clause" above quoted, Herman Jedel has an insurable interest therein and the right to recover his loss from the defendant, so long as, as is the case herein, the liability of the insurance company has not been exhausted. The general rule of interpretation of such a clause is well stated in the English text-book of Wilford & OtterBarry on Fire Insurance, p. 164: "The expression 'goods held in trust' is not limited to goods held in trust in the strict technical sense of the phrase, but extends to goods with which the assured is intrusted. It therefore includes all goods which are in the possession of the assured as bailee, whatever the nature of the contract by which they come into his possession." The rule is the same in this country. In 19 Cyc. 669, it is said: "It is usual for persons engaged in the business of keeping property for others, on account of which they may be liable, to insure such property under policies covering goods held by them 'in trust'; but this term does not imply a technical trust, but only possession of property of others, for which the insured may be called on to account." In Stillwell v. Staples, 19 N. Y. 401, the court says: "It is quite apparent that the words 'in trust,' as thus used, are not to be taken in any strict technical sense, which would limit their operation to cases where the title to goods had been vested in a trustee, subject to some specific trust to be executed by him—for several reasons. In the first place, they would be entirely unnecessary for any such purpose, and would add nothing whatever to the force of the policy. Again, the structure of the clause itself shows the meaning to be different. The words are, 'the property of the insured, or held in trust,' etc. The antithesis shows that the words 'in trust' are meant to cover goods not the property of the insured. But goods held in trust, in the technical sense suggested, would be as much his property as between him and the insurer as those belonging to him in his own right. The words 'in trust' may, with entire propriety, be applied to any case of bailment, where goods belonging to one person are intrusted to the custody or care of another, and for which the bailee is responsible to the owner." To the same effect is Utica Canning Co. v. Home Insurance Co., 132 App. Div. 420, 116 N. Y. Supp. 934.

[2] It likewise admits of no doubt that Herman Jedel or his assignee is the proper party to bring this suit. He is the real party in interest, and it

is well settled that a person for whose benefit a contract is made has a right to sue thereon, although he is not named therein. The learned counsel for the defendant does not dispute this proposition.

[3] I do not think that the settlement made with A. Jedel Company can affect the plaintiff's rights. It may be that the A. Jedel Company could have canceled the policy or waived the trust clause before the fire had taken place, but the liability of the defendant accrued and became fixed at the time of the fire and neither the disclaimer of the A. Jedel Company of any interest in the matches nor the subsequent adjustment of its loss and the cancellation of the policies can relieve the defendant, unless Herman Jedel has waived his rights, or is estopped from asserting them. Although Herman Jedel was a director and an officer of the A. Jedel Company, it is conceded that the business which was conducted by Herman Jedel under the name of the Anglo-American Fireworks Company was not connected with that of the A. Jedel Company, so that in this transaction these two parties are in no wise identified. The defendant when it made its settlement with the A. Jedel Company had actual knowledge of Herman Jedel's claim. Under these circumstances, the cancellation of the policies issued to A. Jedel Company cannot avail this defendant to defeat this action. Utica Canning Co. v. Home Insurance Co., supra, 132 App. Div. 423, 116 N. Y. Supp. 934.

[4] The learned counsel for the defendant, however, argues with a great deal of force that, pursuant to the intention of the parties herein, the insurance policy did not cover Herman Jedel's matches, and relies upon the following circumstances: It appears that Herman Jedel some · time prior to February 24, 1910, bought the merchandise in question from Alfred Czerweny, the plaintiff, who does business in the city of New York. After the matches had been shipped by Czerweny to Newark, Del., he on March 9, 1910, wrote to the Anglo-American Fireworks Company—that is, to Herman Jedel—a letter, which reads in part: "Referring to my conversation with your Mr. A. Jedel regarding the insurance on the matches, would request you to kindly let me know whether you have covered same, respectively whether you as the· owner will take the responsibility in case of fire, or if you expect me to cover the insurance." On March 10, 1910, the Anglo-American Fireworks Company wrote a reply to this letter, containing the following statement: "According to our agreement, you are to effect and attend to the insurance on the matches." Thereafter Czerweny, on or about March 19, 1910, obtained a policy in the North River Fire Insurance Company, insuring Alfred Czerweny or· A. Jedel Company as interest may appear for $1,300, on matches in one-story brick warehouse of A. Jedel Company, situated at Newark, Delaware. The· policy was to run for six months from its date, and was in full force on May 11, 1910, the date of the fire. At the time of the issuance of the policy Czerweny had parted with his title to the matches, and, though the purchase-price had not been fully paid, he had no insurable interest in the property, and the policy issued to him was absolutely void. The defendant, however, claims that the correspondence between Herman Jedel and Czerweny and the· subsequent issuance of the policy is clear proof that A. Jedel Company did not intend to insure the matches when it made its contract of insurance with this defendant and the other insurance companies. I cannot agree with this contention. It may be readily admitted that the terms of the insurance policy in question are not conclusive as between the defendant and the plaintiff's· assignor, and that evidence dehors the instrument may be received to vary or contradict the contract made between A. Jedel Company and the defendant. Lee v. Adsit, 37 N. Y. 78; Lowell Mfg. Co. v. Safeguard.Fire Ins. Co.,. 88 N. Y. 591; Home Ins. Co. v. Baltimore Warehouse Co., 93 U. S. 527, at page 541, 23 L. Ed. 868. However, it must be borne in mind that A. Jedel Company was not a party to the correspondence between Herman Jedel and Czerweny and as Herman Jedel was neither connected with, nor acting for· A. Jedel Company in relation to the matches in question, an arrangement between third parties cannot be injected into the written terms of the policy forming the contract between the A. Jedel Company and the defendant, nor· can any intention which Herman Jedel may have had in regard to the insurance be imputed to, or be taken advantage of by the A. Jedel Company..

If there was on March 10, 1910, no intention on the part of A. Jedel Company to insure the merchandise held by it as bailee, why was on April 2, 1910, the trust clause inserted in the policies? It may be plausibly argued that even if an intention not to insure existed on March 10, 1910, it was abandoned on April 2, 1910, and if we are permitted to seek for a reason therefor, it seems quite likely that in the meantime the A. Jedel Company realized that Czerweny had no insurable interest in the matches, and that, on account of its liability to Herman Jedel, it was necessary to insure the goods by its own policies. It does not appear that A. Jedel Company had any goods other than those in question in trust upon its premises.

[5] If it is proper to inquire into the intention of the parties, the very fact of the insertion of the trust clause is of the greatest weight, and certainly of more probative force in showing what the intention of the parties was than the correspondence relied upon by the defendant which took place between other parties and before the issuance of the policy in suit. A similar situation was presented in the Utica Canning Co. Case, supra, where the court said (132 App. Div. 425, 116 N. Y. Supp. 938) : "In the case at bar we think it clear that, under the terms of the policy, it was intended by the defendant that everything which De Groff & Son should have in their warehouse in the course of their business was to be insured, and this would seem to be the only purpose of the slip or clause which was added to the policy. Such slip was added to obviate the necessity of covering all sorts of different bailments with separate policies. We think that the fair interpretation and meaning of the policies was that they were intended to cover whatever property De Groff & Son had in their warehouse in the course of their business. Plaintiff's goods were there in the course of such business, the goods were lost, and the plaintiff is now entitled to the protection of the policies. De Groff & Son were bailees of plaintiff's goods for hire, and, under the authorities to which we have called attention, we think it clear that the defendant was liable to the owners of such goods for the loss which occurred to them by reason of the fire against which they were insured by the policies issued to De Groff & Son."

[6] That the intention of the parties, even though extraneous evidence be permissible, must primarily be sought in the instrument itself, is well settled. In Burke v. Continental Insurance Co., 184 N. Y. 77, 76 N. E. 1086, the court held that the insurance under a similar clause as in this case did not inure to the benefit of the bailor, for the reason that the agreement with the bailee provided that the bailee should not be liable to the bailor for loss by fire. Upon a retrial of the case, it appeared that a short time before the fire this agreement was modified so that the bailee should be liable for loss by fire, but the terms of the policy remained unchanged. When the case came again before the Appellate Division (128 App. Div. 391, 112 N. Y. Supp. 865), the court held that the one clause which interfered with the risk had been changed, and that the bailee had an insurable interest in the property. See, also, Kline Bros. & Co. v. German Union Fire Insurance Co., 147 App. Div. 790, 132 N. Y. Supp. 181, and Symmers v. Carroll, 149 App. Div. 641, 134 N. Y. Supp. 170, decided by the Appellate Division March 15, 1912. In the Symmers Case the court said: "It is manifest that Starin when he caused the words 'for account of whom it may concern' to be inserted in the policy had in mind and intended that in certain contingencies some one other than himself should be entitled to share in the proceeds of the policies."

[7] The plaintiff's claim is also resisted on the ground that his assignor did not make a proof of loss within the 60 days after the fire, as provided in the policy of insurance. Although I hardly think that this point is seriously urged, it may be well to dispose of it. In the first place, it is doubtful whether there was any obligation on the part of Herman Jedel to file any proof of loss. In Heilbrunn v. German Alliance Insurance Co., 140 App. Div. 557, 125 N. Y. Supp. 374, it was held that neither the mortgagee of real property insured against loss by fire nor the mortgagor need give notice of the loss to the insurer or furnish proof of loss under a policy containing a clause that the loss, if any, be payable to the mortgagee as his interest may appear. The reasoning of that case applies to this, although the facts are not alike. In this case the notice of loss to the defendant is admitted, and the value of the

matches at the time of the fire is likewise admitted. In view thereof, what was the purpose of furnishing proof of loss within 60 days when all the facts were within the knowledge of the defendant? The defense herein is not based upon insufficient knowledge of the plaintiff's claim and the amount thereof or of the conditions under which the claim arose, but upon the denial of any liability for the loss suffered by the plaintiff's assignor. In such a case no proof of loss is required. The rule is stated in 1 Clement on Fire Insurance, 228, with the citation of numerous authorities, as follows: "An unqualified denial of liability or assertion that policy is void waives statement or proof of loss; and this effect is not prevented by a statute imposing an obligation to furnish proofs."

In the view that I take of this case there must be judgment for the plaintiff for the amount claimed.

Argued December term, 1912, before SEABURY, GUY, and GERARD, JJ.

Haitwell Cabell, of New York City, for appellant.

Hugo Wintner, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs, upon the opinion of Mr. Justice Spiegelberg in the court below.

(79 Misc. Rep. 140.)

PEOPLE ex rel. HOELDERLIN v. KANE, Warden.

(Supreme Court, Special Term, Kings County. January 8, 1913.)

1. INFANTS (§ 12*)—STATUTORY REGULATION OF EMPLOYMENT.
    Labor Law (Consol. Laws 1909, c. 31) § 77, as amended by Laws 1912, c. 539, is constitutional in so far as it limits the working hours of minors; the state having power to protect its wards.
    [Ed. Note.—For other cases, see Infants, Cent. Dig. § 13; Dec. Dig. § 12.*]

2. COURTS (§ 95*)—PRECEDENTS—DECISIONS OF COURTS OF OTHER STATES.
    Since the adoption of the fourteenth amendment to the United States Constitution, the federal Supreme Court has become the final arbiter of whether a state in the exercise of its police power has violated the constitutional guaranty, thus making the various state courts courts of concurrent jurisdiction, and so the decisions of the courts of one state on such question are not to be regarded in another as those of a foreign tribunal, but as those of a court of equal authority.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 322, 323; Dec. Dig. § 95.*]

3. CONSTITUTIONAL LAW (§ 89*)—MASTER AND SERVANT (§ 10*)—POLICE POWERS—REGULATION OF FEMALE LABOR—HOURS OF WORK.
    While the courts are bound to protect constitutional liberty against encroachments, even by the Legislature, the liberty to be protected is civil or political liberty, and, while persons are entitled to liberty of contract, the state, if for the protection of its inhabitants, may under its police power limit the hours which women may work in certain industries, as was done by Labor Law (Consol. Laws 1909, c. 31) § 77.
    [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 157; Dec. Dig. § 89;* Master and Servant, Cent. Dig. § 13; Dec. Dig. § 10.*]

4. CONSTITUTIONAL LAW (§ 238*)—EQUAL PROTECTION OF LAW—CLASSIFICATION—"LAW."
    While a law is a rule of conduct which must apply alike to all under like conditions, and the state cannot deny any person the equal protection

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes