SAMUEL WEXLER, Doing Business under Firm Name and Style of GAYETY DRESS COMPANY, Plaintiff, *v.* NATIONAL BEN FRANKLIN INSURANCE COMPANY and Another, Defendants.

Municipal Court of New York, Borough of Manhattan, Fifth District, August 19, 1935.

*Norman S. Rein* [*Joseph Thurlow Weed* and *Bert Cotton* of counsel], for the plaintiff.

*John L. Fletcher* for the defendants.

RAIMO, J.    This action is brought to recover from the defendants on two separate policies of fire insurance.    The plaintiff is a manufacturer of dresses and some time prior to September 28, 1933, sent certain dress materials to his brother, Benjamin Wexler, who was engaged in business as a cutter and finisher of women's wearing apparel, for manufacture into dresses.    Benjamin Wexler was, of course, to receive compensation for his services in this regard. While the dresses were in the process of manufacture, a fire occurred on September 28, 1933, at the place of business of said Benjamin Wexler, which destroyed some and damaged others of the dresses.

At that time Benjamin Wexler was covered against loss by fire under policies issued by the defendants; the National Ben Franklin Insurance Company policy was in the sum of $2,000, while the policy issued by the Great American Insurance Company was in the amount of $1,000.    Both of these policies covered property held by the insured " in trust or on commission," but, as will be subsequently shown, differed in terminology and in application.

The plaintiff proved that a number of dresses having a value of $857 were destroyed by the fire, while certain other dresses were damaged to the extent of $243; the loss in all amounting to $1,100.

Following the fire in question, Benjamin Wexler gave notice of the fire to the defendant companies.    No notice of loss was given by the plaintiff to the defendants, nor was any inventory of goods damaged or destroyed filed in his behalf.    Within two days from the date of the fire, one Murtagh, an adjuster for the defendants, went to the insured's place of business and made a part inspection of the damages.    This witness testified that Benjamin Wexler refused him permission to inspect plaintiff's property which had been damaged in the fire.    No request was made of the plaintiff by the defendants for such an inspection, and it is shown that, with knowledge of the plaintiff's claim, the defendants had made an adjustment and paid Benjamin Wexler for his loss.    On December 6, 1933, more than sixty days after the date of the fire, a notice of claim was

filed with both the defendant companies covering Benjamin Wexler's damaged property and specifically including property of the plaintiff described as " held in trust."

At the time of the fire the plaintiff carried insurance with the Camden Fire Insurance Association which covered property of the insured while in or on the premises of contractors and in the course of manufacture. After the fire the plaintiff negotiated with the insurer and received from said association the sum of $1,100, which was receipted for by him as a loan repayable out of any net recovery to be made by reason of any claim for loss or damage to the property. The plaintiff was permitted by the Camden's representative to remove the partially damaged dresses; the dresses which were damaged beyond repair were thereafter sent to the Underwriters' Association.

1. The defendants argue that neither of their policies covered the plaintiff's property and that the plaintiff has no right to maintain the action. It is apparent that Benjamin Wexler, on September 28, 1933, held the plaintiff's property as bailee for hire. The Great American Insurance Company policy, among other things, covered " the property of the assured, or held in trust or on commission, or on consignment, or sold but not removed, or on joint account with others, or held on storage or for repair." There can be no doubt that this policy covered the plaintiff's dresses and that the plaintiff had a right to sue thereunder for his damages. In *Exton & Co.* v. *Home Fire & Marine Ins. Co.* (249 N. Y. 258) an action was brought by a bailor on a policy containing a clause almost identical with that above quoted. In holding that the coverage of the policies extended to the bailor's property and that he had a right to maintain the action, the court said (at p. 261): " We are of the opinion that the policies in this case covered the Brown Company's paper. It was property ' held in trust ' by the Miller, Tompkins Co. for the Brown Company, within the meaning which has been given to these words in the insurance business and Insurance Law.

" ' The words " in trust " may, with entire propriety, be applied to any case of bailment, where goods belonging to one person are entrusted to the custody or care of another, and for which the bailee is responsible to the owner.' (*Stillwell* v. *Staples*, 19 N. Y. 401.)

" ' The phrases describing property " as held in trust," or " on commission," and kindred terms, in a policy to an agent, factor or the like, have been held as giving to the owner of the property a right to take the place of the insured, to adopt the contract, and to enforce it in his own name or that of his agent.' (*Waring* v. *Indemnity Fire Ins. Co.*, 45 N. Y. 606, p. 610, p. 612.) (See, also, *Lewis* v. *Home Insurance Co.*, 199 App. Div. 556; affd. without opinion, 234

N. Y. 498, and *Home Insurance Co.* v. *Baltimore Warehouse Co.*, 93 U. S. 527, where it was said that the phrase ' held in trust ' is to be understood in its mercantile sense.) "

Nor is it necessary in order to bring sucn an action that the bailor make a request upon the bailee to bring the suit. (*Lewis* v. *Home Insurance Co.*, 199 App. Div. 556; affd., 234 N. Y. 498.)

2. A more difficult question is presented as to the plaintiff's right to succeed in his action upon the National Ben Franklin Fire Insurance Company policy. The applicable clause therein contained reads: " This policy covers  *  *  *  insured's interest in, and legal liability for, such property held in trust or on commission or on joint account with others or on consignment or for repairs or on storage or otherwise or sold but not delivered."

Under the *Exton Case* (*supra*) the plaintiff has the right to pring an action on this policy. The success or failure of the action must depend on proof of the insured's " legal liability " for the property held in trust or on commission. Since the policy insures against the insured's " legal liability " for the property of others in his possession and not against " liability imposed by law " for such property, it is not necessary for the bailor to reduce his claim to judgment; the insured incurs the liability, within the purview of the policy coverage, upon the mere happening of the contingency insured against. (*Eberhard* v. *Ætna Ins. Co.*, 134 Misc. 386.) In the instant case the proof was that the plaintiff's property was damaged by fire while in or on the premises of the insured. The plaintiff did not prove that the fire was caused by negligence or lack of care on the part of the insured. On the other hand, the defendants did not prove that the fire was non-negligent, nor did they even offer proof to show the circumstances of the loss, the origin of the fire, or the precautions taken by them to avoid loss by fire or to remove, if possible, the plaintiff's property from the premises. Such being the fact, I think that the plaintiff has made out a *prima facie* case of liability on the insured's part and, consequently, on the part of his insurer, the National Ben Franklin Insurance Company.

In actions concerned with bailments, the bailor makes out a *prima facie* case by proving a request for the redelivery of the property which has not been complied with by the bailee. The rule with respect to the burden of proof in such situations is stated in the leading case of *Ouderkirk* v. *Central Nat. Bank of Troy* (119 N. Y. 263, 267), where the court said: " It is obvious that a bailee, whatever the character of the bailment may be, when its purpose has been fully satisfied and performed, is bound, upon request, to re-deliver the thing bailed to its lawful owner. This is

necessarily implied, in all cases, from the nature of the contract of bailment. The authorities are uniform to the effect that such re-delivery may be excused in the case of a bailment, mutually beneficial to the parties, by proof that the deposit has been lost or destroyed without negligence, or want of such care on the part of a bailee as prudent men, under similar circumstances, commonly take of their own goods."

In holding that mere proof of a fire, in the absence of any attempt at explanation by the bailee, is sufficient to take the case to the jury, the Court of Appeals, in *Russell Mfg. Co.* v. *New Haven Steamboat Co.* (50 N. Y. 121, at p. 127), said: " The fact of the fire originating on the defendant's premises, in connection with the failure of the defendant to offer any explanation of its origin, or even to produce any of the persons said to have been left in charge, or to show that they performed their duty, or that any effort was made to take the goods out of the reach of the fire, were circumstances from which the jury might have drawn inferences unfavorable to the defendant on the question of negligence. The nature of an accident may itself afford *prima facie* proof of negligence (*Curtis* v. *Rochester and Syracuse R. R. Co.*, 18 N. Y. 534, 544; Story on Bailments, § 338; *Skinner* v. *London, etc., R. Co.*, 5 Exch. 787; *Scott* v. *London, etc., Docks Co.*, 3 Hurl. & C. 596; *Stokes* v. *Saltonstall*, 13 Peters, 181; * * *; *Christie* v. *Griggs*, 2 Camp. 79), and we think, as the case stood, the judge erred in not submitting the question of negligence to the jury." (See, also, *Wintringham* v. *Hayes*, 144 N. Y. 1, 5.)

In *Ætna Ins. Co. of Hartford* v. *Marble Hill Garage, Inc.* (146 Misc. 377) and in *Federal Insurance Co.* v. *Lindsley* (132 id. 54), the Appellate Term, First Department, held that a *prima facie* case against the bailee was not destroyed by proof that the bailed article had been stolen without proof of the circumstances of the loss and at least *prima facie* evidence of due care on the bailee's part.

Certain statements made in *Claflin* v. *Meyer* (75 N. Y. 260); *Stewart* v. *Stone* (127 id. 500); *Galowitz* v. *Magner* (208 App. Div. 6), and *Wilson* v. *Christal* (187 id. 660), might lead to the conclusion that mere proof of a fire or theft would destroy the bailor's *prima facie* case and place upon him the burden of proving negligence. An examination of those cases, however, will show that in each the surrounding circumstances were proved and some explanation of the loss given. Here the defendants attempted no explanation of the circumstances of the loss and offered no proof of facts from which inferences of due care could be drawn.

I am of opinion that the salutary rule which places upon the bailee the burden of showing that the loss was due to circumstances

beyond his control should be applied. Accordingly, I hold that the plaintiff has proved Benjamin Wexler's " legal liability " for the loss.

3. The defendants contend that their policies did not cover the plaintiff's dresses, since the plaintiff carried a policy with the Camden Fire Insurance Association covering property in the course of manufacture on the premises of contractors or subcontractors. Both the National Ben Franklin and the Great American policies contain clauses providing that the coverage does not extend to property " specifically insured." The Camden policy, which is headed " Inland transit floater policy," likewise contains a clause providing that the coverage thereof does not extend to property " covered by specific insurance in this or any other office," except in so far as there is an excess of value over and above the amount of such specific insurance. The Great American policy provides that " excess and/or floating policies " are not to be considered as contributing insurance.

An examination of the policies convinces me that the Great American and National Ben Franklin policies are specific insurance, since they cover property placed or located in the premises of the insured. The Camden policy, on the other hand, which does not cover merchandise in storage or in the premises of the insured, is by its express terms designed to afford coverage to property in transit or in the possession of contractors for the purpose of manufacture, and is clearly a floater or excess value policy. It is intended to afford coverage over and above the amount of specific insurance covering property located at a specific place or covering a specific piece of property. The National Ben Franklin and Great American policies are specific in nature, while the Camden is a floater policy. The distinction between the two types of policy is made clear in *Fairchild* v. *Liverpool & London Fire & Life Ins. Co.* (51 N. Y. 65, 69): " This is what is called a floating policy, intended to cover property or value which cannot well be covered by specific insurance from the circumstance that it is changing in quantity or location. The ordinary purpose of such a policy is to supplement specific insurances and to cover values not covered by them. Here the plaintiffs' property would sometimes be in one warehouse and sometimes in another, and sometimes on wharves or *in transitu* over the streets, and sometimes above the specific insurances and sometimes under them in value. Hence, the necessity for this floating policy to attach to the property wherever it might be, and in all cases when it happened to exceed the specific insurances."

4. The defendants raise certain technical defenses which are that plaintiff did not (a) give immediate notice of loss; (b) file proof of

claim within the time limited by the policies; (c) furnish an inventory of the loss nor separate damaged and undamaged property; and (d) that no inspection of the property was permitted.

So far as notice of loss is concerned, the proof was that the defendants' adjuster visited the premises within two days of the fire; no notice was, therefore, necessary. (*Greenwich Bank* v. *Hartford Fire Insurance Co.*, 250 N. Y. 116.)

An inspection of the plaintiff's property was refused by Benjamin Wexler, the defendants' insured. There was no proof that any request for an inspection was made of the plaintiff in accordance with the requirements of the standard policy.

With respect to the failure to furnish an inventory and to separate the damaged and undamaged property, the proof was that the loss of Benjamin Wexler was adjusted and paid by the defendants with knowledge of the claim of the plaintiff.

So far as the failure to file proofs of claim within the required time is concerned, the proof is that the defendants retained the proofs of claim which were served upon them and which included the claim for loss of the plaintiff herein.

Under the circumstances, the defendants have waived their right to insist upon performance of the technical requirements of the policies. (*McCarthy* v. *Prudential Insurance Co.*, 252 N. Y. 459; *Cummer Lumber Co.* v. *Associated Manufacturers' Mut. Fire Ins. Corp.*, 67 App. Div. 151, affd., 173 N. Y. 633; *Czerweny* v. *National Fire Ins. Co.*, 139 N. Y. Supp. 345.)

5. While the plaintiff was advanced $1,100 by the Camden Fire Insurance Association, such advance did not constitute payment of the loss and is no bar to this action by the plaintiff. The plaintiff signed an instrument acknowledging receipt of the money as a loan repayable out of any recovery he might make by reason of his claim for loss. This advance clearly constituted a loan and did not result in a payment of the loss. (*Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S. 139; 39 S. Ct. 53; 63 L. Ed. 170; *Kalle & Co., Inc.*, v. *Morton*, 156 App. Div. 522; affd., 216 N. Y. 655.)

While the plaintiff proved damages in the sum of $1,100, the complaint demands judgment against the defendant National Ben Franklin Insurance Company in the sum of $313.96, and against the defendant Great American Insurance Company in the sum of $156.98, which are the amounts stated in the apportionment schedule of the proof of loss, totaling $420.94. Interest runs from September 28, 1933.

Judgment for the plaintiff accordingly.