[11] When a trial has been had in which every right of the defendant has been safeguarded by the court and by the prosecution as well, wherein the defendant has been ably and zealously represented by capable counsel, and when by the solemn judgment of the court the defendant has been convicted upon evidence which leaves no room for doubt as to his guilt, a new trial should not be granted unless it clearly appears that since the trial evidence has been newly discovered which, if before produced, would probably have changed the verdict, and which likewise meets the other requirements of the statute in question. Such a case is not presented.

The motion for a new trial is therefore denied.

(96 Misc. Rep. 229)

BUSE v. NATIONAL BEN FRANKLIN INS. CO. OF PITTSBURG, PA. SAME v. MILLERS' NAT. INS. CO. OF CHICAGO, ILL. SAME v. NORTHWESTERN NAT. INS. CO. OF MILWAUKEE, WIS.

(Supreme Court, Trial Term, Erie County. July 20, 1916.)

1. INSURANCE ☞504—FIRE INSURANCE—APPORTIONMENT OF LOSS.

Where there were three policies of insurance, each covering buildings on six distinct parcels of land, and a coinsurer of part had voluntarily compromised and paid its share of the loss, the liabilities of the other companies may be determined from the provisions of the policies, without reference to the compromise payment, if the aggregate payments do not exceed the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1285–1290; Dec. Dig. ☞504.]

2. INSURANCE ☞495(1)—FIRE INSURANCE—"COINSURANCE."

"Coinsurance" is a relative division of risk between the insurer and the insured, dependent upon the relative amount of the policy and the actual value of the property insured, and taking effect only when the actual loss is partial and less than the amount of the policy; the insurer being liable to the extent of the policy for a loss equal to or in excess of that amount.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1270–1272; Dec. Dig. ☞495(1).]

3. INSURANCE ☞504—FIRE INSURANCE—CONSTRUCTION OF POLICY—APPORTIONMENT.

Where a blanket fire policy, providing for apportionment and co-insurance, covered six distinct buildings, for an entire sum, and a loss occurred on a number of them. the liability for the loss will be computed in proportion to the total value of all the buildings, and not the value of those burned, since the latter construction would destroy the effect of the coinsurance provision, and leave the parcels on which no loss occurred without insurance.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1285–1290; Dec. Dig. ☞504.]

4. INSURANCE ☞499—FIRE INSURANCE—STRAIGHT POLICY.

Under a policy of ordinary or "straight" insurance, the value of the property is not important, if not less than the amount of the insurance, since, if the loss is total, and the value of the property equals or exceeds the amount of the insurance. the insurer is liable for the full amount of the policy, and, in case of partial loss, is liable for the amount of the loss.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1274; Dec. Dig. ☞499.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. INSURANCE ☞504—FIRE INSURANCE—APPORTIONMENT OF LOSS—OTHER IN-
SURANCE.

 In an action on three blanket policies, containing provisions for ap-
portionment and coinsurance, covering six distinct buildings, where an-
other company issued a similar policy insuring two buildings, and, by
adding together the full amount of liability on these buildings of the
defendant companies and the other company, the insured will in no in-
stance receive the full amount of his loss, there will be no apportion-
ment, since the insured is entitled to the greatest protection possibly con-
sistent with the provisions of the policy, and the coinsurance clause fixes
the method of apportionment.

 [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1285–1290;
Dec. Dig. ☞504.]

Actions by Gus G. Buse against the National Ben Franklin Insurance
Company of Pittsburg, Pa., against the Millers' National Insurance
Company of Chicago, Ill., and against the Northwestern National In-
surance Company of Milwaukee, Wis., respectively, consolidated for
trial. Judgment for plaintiff.

The three above entitled actions, involving the same questions, were
tried together before the court, without a jury, at the March, 1916,
term of the Erie County Supreme Court.

Gibbons & Pottle, of Buffalo (Frank Gibbons, of Buffalo, of coun-
sel), for plaintiff.

Shire & Jellinek, of Buffalo (Vernon Cole, of Buffalo, of counsel),
for defendants.

ROWLAND L. DAVIS, J. The plaintiff, the owner of six parcels
of property, known as 851, 853, 855, 857, and 851–853 rear Sycamore
street, and 876 Fillmore avenue, in the city of Buffalo, obtained
blanket policies of insurance covering the property, aggregating $8,-
000, as follows: In the National Ben Franklin Insurance Company
of Pittsburgh, Pa., a policy of $3,000; in the Northwestern National
Insurance Company of Milwaukee, Wis., $3,000; in the Millers' Na-
tional Insurance Company of Chicago, Ill., $2,000. The policies are
what are known as "full coinsurance policies." The terms and provi-
sions of these policies were identical, except as to the difference in the
amount, as stated. The plaintiff had procured another insurance pol-
icy issued by the Sun Insurance Office, which covered parcels 851–853
rear, 853, and 855, each in the sum of $500, aggregating $1,500. This
policy also was a full coinsurance policy, identical in its provisions in
that respect to the other policies. These provisions are as follows:

 "This company shall not be liable for a greater proportion of any loss or
damage to the property described herein than the sum hereby insured bears
to one hundred per centum (100%) of the actual cash value of said property
at the time such loss shall happen."

All of the policies also contained an apportionment clause in the
following language:

 "This company shall not be liable under this policy for a greater propor-
tion of any loss on the described property, or for loss by and expense of re-
moval from premises endangered by fire, than the amount hereby insured
shall bear to the whole insurance, whether valid or not, or by solvent or in-

solvent insurers, covering such property, and the extent of the application of the insurance under this policy, or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

While the policies were in force on the 8th of July, 1915, a fire caused damage to the parcels known as 851, 853, 851–853 rear, and 855 Sycamore street. No damage resulted to 857 Sycamore street or 876 Fillmore avenue. The damage as to the other property was partial only as to each, and in varying amounts.

Pursuant to the terms of the policy, an appraisal was had, fixing the sound value of all of the property insured, both injured and uninjured, and the amount of loss on each separate parcel. This appraisal has been accepted by both parties as correct, and the items of value and of less are as follows: 851 Sycamore street, sound value $3,070, loss $389.50; 853 Sycamore street, sound value $1,272, loss $497.07; 855 Sycamore street, sound value $1,610, loss $254.47; 851–853 rear Sycamore street, sound value $2,112, loss $1,625.70; 857 Sycamore street, sound value $4,500, loss nothing; 876 Fillmore avenue, sound value $2,150, loss nothing. The total sound value of all the property was $14,714, and the total loss $2,766.74. The total sound value of the four parcels of property sustaining loss was $8,064.

From the foregoing statement of facts, it will be readily seen that the situation is somewhat confusing; and (1) to interpret the policies in relation to their respective liabilities for the losses sustained, and (2) to apportion those losses between the companies insuring the whole property, and the company insuring only a portion, are the somewhat perplexing problems presented.

[1] It appeared upon the trial that the loss had been adjusted with the Sun Insurance Office, and an amount had been paid by that company under its policy, as claimed by the plaintiff, in compromise of its liability. The amount actually paid by the latter company, it seems to me, is immaterial as long as it was paid voluntarily, and that company is not seeking contribution. The liability of the defendant companies may be determined from the provisions of the policies themselves without reference to any amount actually paid by the Sun Insurance Office in compromise or settlement of its liability, at least if the aggregate payments do not exceed the loss. Lucas v. Jefferson Ins. Co., 6 Cow. 635. As already stated, the blanket policies issued by the three defendants were in the form of what is known as "full or 100 per cent. coinsurance."

[2] The first question at issue between the parties is as to the amount of liability which defendants sustained toward the parcels of property injured; the claim of the plaintiff being that the total amount of the policy is applicable to the payment of the loss sustained on the four injured parcels, although it, by its terms, also covered the two that were uninjured—in other words, that these parcels of the value of $8,064 are practically fully insured by the policies aggregating $8,000. This contention is denied by the defendants. In reaching an understanding of this question, which will be the first considered, it will be necessary to formulate a legal definition and statement of what coin-

surance means. Coinsurance means a relative division of the risk between the insurer and the insured, dependent upon the relative amount of the policy and the actual value of the property insured thereby. In full or 100 per cent. coinsurance, if the value of the property equals or is less than the face of the policy, the risk is entirely upon the insurer. If the value of the property exceeds the face of the policy, then the insurer and the insured assume the risk in the ratio of the face of the policy to the excess in value.

[3, 4] The parties may not know the actual value of the property at the time it is insured, and therefore agree upon an arbitrary sum as its value rather than go to the trouble and expense of making an accurate appraisal of the property; or it may be that the value of the property may undergo change, and increase during the term of the policy; and when a loss occurs, and the sound value of the property is determined at that time, it may turn out that the actual value was considerably in excess of the arbitrary value fixed in the policy. Then by the terms of the policy the insured becomes · liable for his proportion of the risk, to wit, the amount of such excess. Where the loss is total, the problem is simple; the company pays the total amount of the insurance, and the insured bears the burden of the remainder of the loss. It would seem that where the loss is partial, under the same circumstances, the reasonable construction would be that the two coinsurers should share the loss in the same proportion.

There seems to have been no definition given nor a definite statement made of the liabilities of the parties to a policy of coinsurance by the courts of this state, particularly where the loss was partial, so far as I can discover, where the question was directly presented. In Richards on Insurance, page 301, it is said:

"The object of the coinsurance clause is to compel the insured to take out insurance to the designated percentage of the value of his property, usually either 80 or 100 per cent., or else become his own insurer to the amount of the deficiency, and the average clause applies where property is insured as an entirety, though located in several places or buildings in proportions perhaps unknown to the insurers, or in shifting proportions, and its object is to ratably distribute the insurance over all the properties, so that, in case of a loss in one place, the insured cannot call upon the total amount, but only the ratable amount of insurance for contribution to such a localized loss."

In discussing the question as to what is the meaning of "whole insurance," Vann, J., says, in Farmers' Feed Co. v. Scottish Union Ins. Co., 173 N. Y. 241, at page 247, 65 N. E. 1105, at page 1107 (speaking of 80 per cent. coinsurance):

"Thus the effect of the coinsurance clause is that if the property is insured to 80 per cent. of its value, or more, in case of a total loss the whole sum insured becomes due, but with insurance for less than 80 per cent. of the value, and a loss also of less than 80 per cent., the owner becomes, in effect, a coinsurer proportionately. He could have procured insurance to 80 per cent. of the value, but, not having done so, he becomes his own insurer pro tanto. This accords with the way the clause is characterized in the policies, for it is entitled 'percentage coinsurance clause,' which means insurance by the company and the owner, depending upon the percentage or proportion which the insurance bears to the value. The object is through lower premiums to induce the owner either to take out insurance to 80 per

cent. of value, or to become a coinsurer with less risk to the company in case of a loss falling below such percentage of value. Where either the loss or the insurance equals or exceeds 80 per cent. of the value, the clause has no effect; but, when both are less, the insured and the insurer bear the loss in certain proportions."

But the learned counsel for the plaintiff contends that, in the case of a blanket policy covering several distinct parcels, the rule is different; that the plaintiff is entitled to apply the total amount of insurance, to wit, the face of the policies, to the particular parcels which have sustained loss, and, as the value of these parcels does not exceed the face of the policies, the plaintiff is entitled to recover the full amount of either total or partial loss sustained on each of these particular parcels of property. He relies largely upon the statement in the opinion of Rapallo, J., in Odgen v. East River Ins. Co., 50 N. Y. 388, at page 392 (10 Am. Rep. 492), where it is said:

"By insuring several parcels of property for an entire sum the insured obtains the advantage, and the insurer subjects himself to the liability, of having so much of the total sum insured as may be necessary to compensate for damage to any part of the property applied to that part, though the sum named in the policy would have been insufficient to cover the loss, if the whole had been destroyed. Thus it is left to the result, in case of a partial loss, to determine what sum is insured upon any particular parcel, the only limit being its value."

In rejecting the doctrine quoted, as applicable to this case, it may first be noted that the language of the learned court was purely obiter. He had already decided the question of apportioning the loss between the blanket policies and the specific policy issued by the defendant, and the case involved a total loss, where it was held there was no occasion for any apportionment; and, following the language quoted and relied upon by the plaintiff's counsel, the court says:

"We refrain from expressing an opinion now upon the several phases which might be developed under an insurance of this character in case of partial loss, confining our adjudication to the case before us, which was that of a total loss of the whole subject insured by the policies."

It may be noted that the policies under discussion were not coinsurance policies.

The learned counsel also relies upon the authority of Lesure Lumber Co. v. Mutual Ins. Co., 101 Iowa, 514, 70 N. W. 761, and Page v. Sun Ins. Co., 74 Fed. 203, 20 C. C. A. 397, 33 L. R. A. 249. The question in each instance before the court was the second question involved in the case at bar, to wit, the apportionment of the loss between the insurance companies having respectively blanket and specific policies on parcels of property sustaining loss. In determining the respective liabilities of the companies, it was held in those cases that, where several parcels of property were insured by blanket insurance and one parcel by specific insurance, the total amount of the policy of blanket insurance was applicable to the parcel injured covered by specific insurance. If this was the correct rule in determining the apportionment of loss between two companies, it ought, of course, to be the correct rule of liability as between the insured and the company issuing the blanket policy. The error into which the learned counsel has fallen, it seems

to me, is in not noting the distinction between the terms of the policies. The policies in the cases cited did not contain the coinsurance clause. The coinsurance form is apparently modern. Richards on Insurance, 442, note.

The rule contended for by counsel might be the correct one, if the policy was one of ordinary or "straight" insurance. Under such policies the value of the property is not important, as long as it is not less than the amount of the insurance. In such case, if the loss is total, and the value of the property equals or exceeds the amount of the insurance, the company is liable for the full amount of the policy. In case of partial loss, the company is liable to the amount of the loss. In 19 Cyc. 838, it is said:

"In case of partial loss, the company is liable under the ordinary policy to pay the full damage up to the amount of the insurance; but it may be provided in the contract that the insured shall carry a part of the risk and the company shall assume the risk as to a portion only of the value of the property" (citing Farmers' Feed Co. v. Scottish Union Ins. Co., supra).

Under the coinsurance policy, the company does restrict its liability. To adopt the rule contended for by plaintiff would be to exempt entirely the insured from any liability as to coinsurance, except when the loss was total. It would leave portions of the property without insurance, for if the four parcels in question had been totally destroyed, and if, as the plaintiff contends, the insurer was liable for the full amount of the policy, to be applied on those parcels, the effect would be to leave the other two without insurance. In Odgen v. East River Ins. Co., supra, Rapallo, J., says:

"Where several parcels of property are insured together for an entire sum, it is impossible to say as to either of the parcels that there is no insurance upon it."

If there had been total loss of the four parcels, and no loss on either of the other two parcels, under the doctrine advocated by counsel, the plaintiff would then have the total amount of his insurance and the remaining amount of his property with its value entirely unimpaired, and he would in no sense be a coinsurer. In other words, the plaintiff would never be a coinsurer, except in the event of a total loss of all the parcels covered by the blanket policies. This would do a violence to the reasonable interpretation of contracts, which it seems to me cannot be justified. I am not unmindful of the rule that:

"Of two admissible constructions of an insurance contract the one against the insurers should be preferred, since they dictate its form and are the authors of its ambiguity" (Imperial Shale Brick Co. v. Jewett, 169 N. Y. 143, 62 N. E. 167), and that "any uncertainty in the language of a fire insurance policy will be resolved in favor of the insured" (Maisel v. Fire Association, 59 App. Div. 461, 69 N. Y. Supp. 181; 19 Cyc. 656).

But it seems to me there is no ambiguity, and we must adopt the principle laid down in Allen v. German-American Ins. Co., 123 N. Y. 6, 25 N. E. 309, that:

"A policy of insurance forms no exception to the general rule that contracts will be enforced according to their terms, and effect will be given to the expressed and evident intention of the parties."

In Richards on Insurance, page 301, it is said:

"In the absence of a coinsurance clause, the assured collects his whole loss; if that does not exceed his insurance, and his whole insurance, if that does not exceed his loss. With a coinsurance clause present, the foregoing rule of recovery is modified, and the recovery reduced, but only if the insurance and the loss are both below the percentage of value, usually 80 or 100 per cent., as named in the clause."

I therefore reach the conclusion that the liability as to the defendant companies on the partial loss sustained on the property injured is represented by the proportion as $14,714, the value of the property, is to $8,000, the amount of the insurance, so is $2,766.74, the total amount of loss on the four parcels, to the amount required, to wit, $1,504.28, the sum for which the defendant companies are obligated.

[5] There remains to be considered the question of what, if any, apportionment should be made between the defendant companies and the Sun Insurance Office, which had what has been called "specific insurance" on three of the parcels injured. Perhaps no question has led to a greater confusion in the courts than the questions arising in what is known as "nonconcurrent or partially concurrent apportionments." In a very able discussion of the subject in a footnote in Richards on Insurance (3d Ed.), page 440, written by Mr. Willis O. Robb, it is stated that there are at least six different rules which courts in different jurisdictions have adopted, and which Mr. Robb summarizes in the comment that:

"No one of them is either demonstrably sound in theory or universally applicable in practice."

He calls attention to the fact that these rules were all made in reference to the ordinary or open insurance policy, and that the advent of the coinsurance clause has tended to discredit all the rules that had theretofore been applied to apportionment of loss among nonconcurring or partially concurring policies.

In deciding that the policies of the defendant companies should be interpreted so that the coinsurance clause applies to cases of partial loss on separate parcels of property, and that the insurer shares the risk for the excess of value of the property beyond the amount of the policy applicable thereto, it is difficult to understand on any rational theory how it may concern the defendant companies whether the insured carries the remaining risk himself or, for his own protection, shares that risk with some other company by taking out additional insurance. We must keep in mind the fact that the policy in the Sun Company was also a coinsurance policy. Applying the same principle of determining liability to the Sun policy that we have adopted for the defendants' policies, we find that on parcel No. 853, where the value of the property was $1,272, the amount of the insurance on this property was $500, the loss $497.07, and the liability of the Sun policy will be $500/1272$ of the loss, or $195.40. Similarly, on parcels No. 855 and 851–853 rear, its liability would be, respectively, $79.03 and $384.82.

The liability of the defendant companies on the same three parcels for the loss sustained is, respectively, on No. 853, $270.26; on No. 855,

$138.35; on Nos. 851–853 rear, $883.89. By adding together the items of liability of the Sun Company and of the defendant companies on each of the three parcels, we find that, if all the companies are held to the limit of their liability, the insured will in no instance, receive the total amount of his loss.

There is a well-recognized principle of insurance, as determined by the courts, that the insured should be given the greatest protection possibly consistent with the provisions of the policy. In discussing the question of the confusion in the law regarding apportionment, in Richards on Insurance, at page 438, it is said:

"One principle, however, the courts seem to hold in common, to wit, that, unless the express phraseology of the policies prohibits, the contribution clause ought not to be so applied as to diminish the protection of the insured; since usually the insurer fixes the amount of his premium regardless of other insurance, and if, after the fire, he happens to find other insurance which relieves him in part from his liability, it is a piece of pure good fortune. His principal engagement is to pay the loss in full up to the face of his policy, and the insured has given no promise to take out or to keep up other insurance."

If we were to adopt the rule laid down in Farmers' Feed Co. v. Scottish Union Insurance Co., supra, that the defendant companies were entitled to have the apportionment clause interpreted by treating the face of the policy, $500, as a part of the "whole insurance" on the three separate parcels insured by the Sun Company, the effect would be that, by taking out this additional insurance and paying the premium, the plaintiff would actually have reduced the liabilities of the companies, and would be able to collect only a much smaller percentage of his loss than as though he had taken no additional insurance. This, of course, would be manifestly inconsistent and unjust. The specific insurance in the Farmers' Feed Co. Case was an ordinary open policy, and did not contain the coinsurance clause, as does the policy in the Sun Company, so that rule cannot be deemed applicable here.

It seems to me that under these coinsurance policies the apportionment rule cannot justly be applied, where the amount of the liability of all the companies is less than the actual loss. In commenting on the rule of apportionment adopted in Blake v. Exchange Mutual Insurance Co., 12 Gray (Mass.) 265, Rapallo, J., in Odgen v. East River Insurance Co., 50 N. Y. 388, 10 Am. Rep. 492, says:

"That rule is, in substance, that for the purpose of apportioning the loss in case of overinsurance, where several parcels are insured together by one policy for an entire sum, and one of the parcels is insured separately by another policy, the sum insured by the first-mentioned policy is to be distributed among the several parcels in the proportion which the sum insured by that policy bears to the total value of all the parcels. * * * It is manifest that there was no overinsurance, and that consequently there is no occasion for any apportionment."

So in the case at bar there was no overinsurance on any of these parcels, and I therefore conclude there is no occasion for any apportionment. This conclusion is strengthened by the provisions of the policies in suit. The apportionment clause is in the general standard printed form. The coinsurance clause is one of several riders attach-

ed to the policy, partly typewritten and partly printed, which tend to modify the general provisions of the policy. The latter part of the apportionment clause says:

"And the extent of the application of the insurance under this policy, or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

The contribution has been provided for by the coinsurance clause attached, which fixes the liability of the company for the proportion of loss or damage which the face of the policy bears to 100 per cent. of the actual cash value of the property. It follows that the total liability under the three policies in suit for the loss on the four parcels of property amounts to $1,504.28, for which the National Ben Franklin Fire Insurance Company of Pittsburg, Pa., is obligated to pay three-eighths, or $564.10; the Northwestern National Insurance Company of Milwaukee, Wis., three-eighths, or $564.10, and the Millers' National Insurance Company of Chicago, Ill., two-eighths, or $376.08.

Judgment for the plaintiff accordingly.