195 So. 747
**PEARL ASSUR. CO., Limited, v. HARTFORD FIRE INS. CO. OF HARTFORD, CONN., et al.**
**6 Div. 593.**

Supreme Court of Alabama.
March 28, 1940.

Rehearing Denied May 9, 1940.

Dan MacDougald, of Atlanta, Ga., D. K. McKamy, of Birmingham, MacDougald, Troutman & Arkwright, of Atlanta, Ga., and Benners, Burr, McKamy & Forman of Birmingham, for appellees.

Leader, Hill, Tenenbaum & Seedman, of Birmingham, for appellant.

FOSTER, Justice.

The questions here involved relate to the fact of liability by appellant under the terms of its policy for the fire loss of certain cotton; and, second, if such liability exists when its policy is considered in the light of the facts surrounding the parties and known to them, a proper apportionment of the loss so far as appellant is concerned, considered in the light of the existence of other insurance in that connection.

A bill in equity was filed by appellant, which we will sometimes refer to as "Pearl," seeking a declaratory judgment to determine the questions which we have above broadly stated. It makes parties (with others) Boaz Warehouse Company, a corporation, to which we will sometimes refer as the warehouse company, also Boaz Mill and Gin Company, a corporation, to which we will sometimes refer as the mill and gin company. It is in three phases, separately asserted and argued. The first and second question the fact of liability at all by Pearl, and the third is in the alternative and is predicated upon a possible holding that Pearl's policy is liable in some amount.

### First Phase.

The coverage of Pearl's policy is as follows: "1. This insurance covers on cotton in bales in the legal custody of the assured, but only on cotton for which insured receipts have been issued, prior to loss, and are outstanding during the life of this policy, under the terms of which receipts the assured agrees to indemnify the

518

owner of the cotton against loss or damage, only while such cotton is contained in any of the buildings, sheds, platforms, and/or yards of the hereinafter described premises of the assured, except as hereinafter provided."

The coverage does not include cotton for whose loss the warehouseman has not agreed in terms to· indemnify the owner. The assureds are the two Boaz companies engaged in a warehouse business for the storage of cotton at the same warehouse, each issuing separate receipts for its separate customers, and where each of said receipts so far as we are here concerned had endorsed on it that the cotton was insured. It was all cotton for which "insured receipts" had been issued. The receipts issued by the Boaz Mill and Gin Company contain this statement: "This said bale of cotton is fully insured by the undersigned warehouseman against loss by fire or lightning." It further contained the word "insured" stamped on the receipt. It further contained the statement in the ·left-hand corner, as required by law, that among the charges made against the owner of the cotton was "insurance per month * * * ten cents (10¢)." The receipt issued by the Boaz Warehouse Company was in a slightly different form. It read: "The said bale of cotton is not insured by the undersigned warehouseman against loss by fire or lightning unless otherwise stated herein." But it was otherwise stated therein by stamping thereon the word "insured." It also contained the statement that among the charges was "insurance per month."

Appellant cites cases in which the policies have a clause whereby they cover insured's interest and legal liability, and which hold that unless the warehouseman is legally responsible for the fire, or has an interest in the cotton to be protected, the coverage does not apply. Wexler v. National Ben Franklin Ins. Co., 156 Misc. 755, 281 N.Y.S. 949; Orient Ins. Co. v. Skellet Co., 8 Cir., 28 F.2d 968; Tubize Chatillon Corporation v. White Transportation Co., D.C., 11 F. Supp. 91.

Whereas if he insures for the benefit of the owners of the goods intrusted to him as well as for his own benefit, he will be entitled to recover the full value of the property insured, to the extent of the insurance, holding any balance above his own interest as trustee for the owners. Richards on Insurance 66.

In the instant case the coverage was not on his interest nor to indemnify him against liability, so far as its terms indicate. Home Ins. Co. of New York v. Peoria, etc., R. Co., 178 Ill. 64, 52 N.E. 862. But it is upon cotton in bales, a further description of which is that it is only cotton for which insured receipts had been issued containing terms by which assured agreed to indemnify the owner against loss or damage.

The inquiry in this connection is whether the cotton lost was such as is there described. Insured receipts had been issued, but did they in terms require the warehouseman to indemnify the owner against loss? The receipts themselves are in such terms as seem to mean that the warehouseman was obligated to insure the property for the benefit of the owners. St. Paul Fire & Marine Ins. Co. v. Kaufman Compress Co., 5 Cir., 93 F.2d 156; Home Ins. Co. v. Peoria, etc., Rwy. Co., supra; Rice Oil Co. v. Atlas Ass'r. Co., 9 Cir., 102 F.2d 561 (14 and 15), page 574. When so, a failure in that respect would cast on the warehouseman liability to indemnify the owner for a loss which may occur by fire. Alabama Red Cedar Co. v. Tenn. Valley Bank, 200 Ala. 622, 76 So. 980; Wade v. Robinson, 216 Ala. 383, 113 So. 246; 26 Corpus Juris 43, section 32.

It also appears from the testimony of Mr. Elrod, as it appears in the agreed statement of facts, that Pearl's agent was informed that most of the cotton in this compartment would be government loaned cotton, and indicating that the protection to be accorded was for the benefit of the government agency.

We have reached the conclusion that the cotton involved in the fire was that on which Pearl's coverage extended within the terms of the policy considered in connection with concurrent events and conditions, so that it is not necessary to consider the effect on the question of the regulations of the State Board of Agriculture imposing certain duties on warehousemen issuing receipts for insured cotton.

Second Phase.

■ The two assureds were warehousemen and· had issued respectively "insured receipts" for the cotton damaged by fire, each for different bales of the cotton. All such cotton had been pledged by its owners and receipt holders to the Commodity Credit Corporation, a government lending agency, as security for loans made by it to

such owners, respectively. The Commodity Credit Corporation had procured a policy of insurance on the cotton from the respondent Hartford Fire Insurance Company, then in full force and effect, and there was no excess in value of the property included over the amount of the Hartford Fire Insurance Company's policy.

Paragraph 17 of the Pearl policy provides: "This insurance does not cover any cotton on which the owner has other insurance covering the same location, except on the value, if any, in excess of such other insurance." The Pearl policy also provides (line ninety-six to one hundred): "This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by the company in case of loss, may be provided for by agreement or condition written hereon, or attached or appended hereto. Liability for reinsurance shall be as specifically agreed hereon."

The Hartford policy provides: "This policy covers the claim of Commodity Credit Corporation (including principal, accrued interest and accumulated charges, as provided in the loan agreement) as of the time of payment, in each and every bale of cotton represented by warehouse receipts pledged as security to Producers' Notes on 1934–35 C.C.C. Cotton Form A, etc." The pertinent provisions of paragraphs 5 and 6 of the Hartford policy are:

"5. It is understood and agreed that it is the intent of this contract in the event of loss or damage by fire or lightning to cotton represented by insured warehouse receipts, to protect and indemnify the assured against failure of the warehouseman, through the said errors, omissions, or violations as described in paragraph No. 4, to account to the assured as the holder of such insured warehouse receipts for insurance upon the cotton represented thereby to the full extent of such loss or damage. This insurance, being of the nature of excess insurance, shall not contribute with any other insurance.

"6. As to loss occasioned by tidal waves and/or overflowing rivers this is direct or primary insurance, so far as the interest of the assured is concerned, and insures the interest of the assured in cotton represented by warehouse receipts held by them as collateral pledged to secure their loans."

Hartford's policy, as clause 5, supra, shows, is in the main one of "errors and omissions," and excess insurance. Its direct coverage is only under six, supra, not here applicable.

Pearl claims that since its policy is excess under clause 17, supra, (except as to specific insurance, see amended 6, hereinafter copied and discussed), that its liability only extends beyond that of Hartford's, which is not specific. But by its proper interpretation Hartford's policy, in this respect, is to insure the Commodity Credit Corporation to the extent that there is a failure by error or omission or violation of the law to have full coverage on the cotton. In other words, it means that if the policies of Pearl and Commercial Union Fire Insurance Company (the former carrying general insurance and the latter specific) do not fully cover a loss by fire, for any reason, and there is no other insurance coverage enforceable, Hartford obligates to supply the deficiency.

This meaning of this policy has been so treated and held not to be "other insurance" in a policy with a clause similar to No. 17, supra, of Pearl's. St. Paul F. & M. Ins. Co. v. Garza County Warehouse & M. Ass'n, 5 Cir., 93 F.2d 590. The reasons then assigned cannot be controverted, and we concur in them, and in the conclusion there reached.

Third Phase.

 This aspect of this litigation involves a construction of the Pearl policy as applied to the facts here involved. The features of the policy necessary to an understanding of the questions are as follows:

Clause 3 is in the following language: "This company shall not be liable for more than such proportion of any loss as the limit of liability mentioned below, applying at the place where any loss or damage shall occur, bears to the value of the cotton covered by insured receipts at such location at the time of any loss or damage. The amount of insurance applying at the place

520

of a loss shall be the limit of liability herein named where the value at risk hereunder at such place exceeds such limit, and in all other instances the value at risk hereunder at such place."

Clause 4: "It is agreed that the limit for loss by any fire or conflagration shall not exceed (see paragraph 2A) total at all locations One Hundred Ten Thousand and no/100 dollars."

Clause 6, as it appears in the printed form: "Other insurance permitted. The amount at risk hereunder shall be the total value (subject to the requirements concerning monthly reports) less the amount of specific insurance at any certain location by this policy, but in no event to exceed the limit of loss by any fire as fixed in this policy."

Paragraph 6, as amended: "Other insurance permitted. The amount at risk at any certain point hereunder shall be the total value of the insured property (subject to requirements concerning monthly reports) less the amount of specific insurance at that location covered by this policy, but in no event to exceed the limit of loss by fire fixed in this policy, and in the event any loss or damage by fire shall bear its pro rata proportion of such loss, based upon its amount at risk, with the specific insurance."

A sheet added to the policy is a printed one, with many stipulations. One clause of which, forming lines ninety-six to one hundred, bears on this question, and it is as follows: "This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, or by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto. Liability for re-insurance shall be as specifically agreed hereon."

The Boaz Mill and Gin Company, which we will designate as the mill and gin company, and the Boaz Warehouse Company, which we will designate as the warehouse company, were jointly owned and operated, as separate corporations. For reasons not necessary here to explain, they each did the business of a cotton storage warehouse in a building owned by the warehouse company, which had four separate compartments, each containing cotton. The assured is designated as "Boaz Mill and Gin Company, Inc., and its successor, Boaz Warehouse Company, Inc." The mill and gin company was intending to retire from the warehousing business, and had been using a storage place elsewhere. It moved its cotton held in storage to the building of the warehouse company. Each compartment in the warehouse was a separate unit for storage. The mill and gin company held "insured cotton" in storage in compartments 2, 3 and 4, aggregating in value $145,644.64; the warehouse company held "insured cotton" in compartments 1 and 4, in value of $103,907.15, making a total value of $249,551.79 at the time of the fire. The fire was limited to compartment 4, in which the cotton was virtually all destroyed. There was an ascertained salvage value. After deducting such value, the loss in No. 4 was $120,253.36, of which $86,-308.41 was for cotton held by the warehouse company, and $33,944.95 by the mill and gin company.

At the time of the fire, the warehouse company had no other insurance than the Pearl policy. The mill and gin company had other insurance, called "specific," as follows: $60,000 on cotton it had stored in compartment No. 2, and $60,000 in Commercial Union Fire Insurance Company (which we will refer to as Commercial) on cotton it had stored in any of the compartments, of course, including No. 4.

The trial court held that when there was a fire in a compartment, as in No. 4, in which there was cotton of both assureds, on which only one assured had other specific insurance, that assured which had no such insurance should be under the provisions of clause three, which he called the average clause, and that the other should be under amended six. In other words, that amended six has application only when there is specific insurance. So that as the warehouse company had a total amount insured in both compartments of $103,-907.15, with a loss in compartment 4 of $86,308.01, and no specific insurance, the formula under the average clause of three should be $\frac{110,000}{103907.15} \times 86308.01$. The result of that computation would exceed the

amount of its loss, so that the liability of Pearl was fixed at $86,308.01.

The court then proceeded to compute the amount of the liability of Pearl to the mill and gin company under amended six. It had other specific insurance there of $60,000. The court found that Pearl's amount there at risk was $110,000, limit of liability, less $86,308.01, the amount of the warehouse company claim, or $23,690.59. And that its loss of $33,944.95 should be prorated with the specific insurance of $60,000, making a formula of $\frac{23691.59}{83691.59} \times 33944.95 =$ 9609.11. The court found that "Commercial" agreed to a liability of $23,780.78, and rendered judgment accordingly. The judgment against Commercial, carrier of the specific insurance, is not here in question.

Appellant's contention is that this policy should be interpreted as it appears in clause three. That is, that its liability is controlled by it, which should be called a co-insurance clause, and it is in the nature of a limitation of liability and the fixation of insurer's share of the loss, that the existence of specific insurance only serves to aid in fixing the limit of liability, which is the amount of the value of the property covered on less the amount of such other insurance, the result not exceeding $110,000. That when that limit of liability is fixed, the amount of the loss to be borne depends upon the ratio which such limit bears to the whole amount of the value of such property. This nature of insurance may exist when the insurer stipulates a fixed unchangeable amount as its limit of liability as well as when such limit fluctuates due to the conditions named.

In the instant case the limit is made to fluctuate, dependent upon two factors, which may be different at any given time. One is the amount of the value of the cotton covered on, and the other is the amount of specific insurance outstanding with a result not exceeding $110,000. When the amount so to be computed is ascertained as of the date of the fire, the enumerator of the fraction of the loss is thus fixed, as it is fixed by a designated figure in a policy which has no such shifting feature. When that is fixed, the denominator is the amount of the total value of the cotton covered; that fraction times the amount of the loss is the share of it to be borne by Pearl on that basis.

This form of insurance has an established place in the trade, and is fully recognized by the courts as a reasonable contractual status, when it is thus made. It thereby enables the assured to do one of two things at his discretion, (1) to carry a part of the risk himself and share in the loss in proportion as the values covered bear to the limit of liability in the policy, or (2) to see to it that the values covered do not exceed the limit of liability. In the last event only is he fully insured.

This form of insurance is approved in Christian & Daniel v. Niagara Ins. Co., 101 Ala. 634, 14 So. 374, 377. To quote from it: "By not permitting the value of the property insured to exceed the amount of the insurance, the entire loss is recoverable"; and "The risk the insured carries, under the provisions of this policy, is increased in proportion as he increases the value of the property covered by the policy beyond the amount of the insurance, and the extent of the liability of the insurer is proportionately diminished." To the same effect is the case of Teague v. Germania Fire Ins. Co., 71 Ala. 473, and also the case of Buse v. Nat. Ben Franklin Ins. Co., 96 Misc. 229, 160 N.Y.S. 566, affirmed in 226 N.Y. 589, 123 N.E. 858.

Appellant contends that this aspect of the insurance law is here applicable and on that basis argues that its liability for the loss should be computed as follows: "The limit of liability" is ascertained by subtracting from the amount of the value of total coverage $249,551.79, the amount of the specific insurance $120,000, leaving $129,551.79, which exceeds $110,000, which therefore becomes the limit of liability and is the enumerator of the fraction, and that the amount of the value of the total coverage, $249,551.79, is the denominator to ascertain Pearl's share of the total of $120,253.35, or $\frac{110,000}{249551.79} \times 120253.35$, or about forty-four per cent. of the loss equals about $53,006.48.

But for this theory to have application the policy must be effectual as is set out in clause three in the instant case: that is, the share of the loss must be in the ratio that the amount of the limit of liability bears to the amount of the total values covered, and interests of both assureds pooled. It cannot have application when the policy provides a different method of ascertaining the amount of the share of the loss which the insurer must sustain.

Amended six has this provision: "And in the event of any loss or damage by fire (Pearl) shall bear its pro rata proportion of such loss, based upon its amount at risk, with the specific insurance." That feature was added to clause six as it appeared in the printed form. For what purpose?

Mr. Jones, Pearl's agent, testified, as we understand it, in substance, that the addition of clause six was made so as to make Pearl liable to contribute to a partial loss and not to limit its liability to the values in excess of specific insurance, but in proportion to the total value of the cotton covered on. Mr. Elrod, for the warehousemen, testified that he told Mr. Jones in substance that he wanted full coverage for the government loan agency and asked whether the policy did so; that Mr. Jones assured him that it did so by means of amended six as a rider. So that this addition was made on one or the other theory. It is reasonable to suppose that the purpose of assured was full protection for the government agency.

We think its terms support that version by which Pearl and the specific carrier prorate a partial loss in the proportion that each bears to the total amount of them both covering on that loss. In order for the coinsurance clause to be in force, as that term is understood and expressed in clause three, the ratio must be to the total value of the cotton insured not to the total insurance on the property lost.

In Richards on Insurance, page 950, several forms of coinsurance are there set out. They all make the ratio to be the amount of the limit of liability to the cash value of all the property covered. Such were the forms in the two Alabama cases cited. The whole theory of coinsurance as interpreted in the cases and authorities to which we have been cited, is based upon a ratio thus in substance stated. Richards on Insurance, p. 351 et seq., section 228; 26 Corpus Juris 357. No citation is made where there appears a coinsurance clause where the ratio is that of the "amount at risk with the specific insurance."

The usual clause for prorating a loss between concurrent carriers is substantially set out in lines ninety-six to one hundred of this policy, which we have quoted. It contemplates a total coverage of concurrent insurance. Richards on Insurance, p. 455. This designates insurance placed in other companies covering the same risk, while there is no "coinsurance" unless the assured bears a portion of the risk. Oppenheim v. Fireman's Fund Ins. Co., 119 Minn. 417, 138 N.W. 777.

Should the interests of the two assured be pooled?

It is thus stated in Richards on Insurance, page 464, in respect to the apportionment between a blanket policy and a specific policy, not controlled by another clause:

"Where, however, the apportionment involves only what is called simple nonconcurrence, that is, where only one of the several classes of property covered by the blanket policy is also covered by specific insurance, two rules have been adopted by the courts, which when the facts warrant may be invoked to determine the proper apportionment. These rules are as follows: First, the full amount of the blanket or general policy must contribute with the specific policy to pay the loss on property covered by the specific policy where this is the only loss. Second, where there is a loss both on the property which the specific policy covers and on that which it does not cover, the blanket policy must first pay the latter loss, and then with its balance contribute with the specific to pay the loss covered by both."

"[Note] Cromie v. Kentucky, etc., Ins. Co., 15 B.Mon.(Ky.) 432. And see American Cent. Ins. Co. v. Heath, 29 Tex.Civ. App. 445, 69 S.W. 235. This, known as the Cromie rule, is sometimes stated as follows: 'In apportioning losses between policies which are only partially concurrent, the nonconcurrent liability of the general policy shall be discharged before contribution is made to a loss for which all are liable.' The specific in such a case is entitled to contribution from the more general policy, if the more general is not otherwise exhausted. Home Ins. Co. v. Baltimore Warehouse Co., 93 U.S. 527, 23 L.Ed. 868; Ogden v. Ins. Co., 50 N.Y. 388, 10 Am.Rep. 492; Hough v. Ins. Co., 36 Md. 398; Meigs v. London Assur. Co., C.C., 126 F. 781."

This court does not seem to have taken a position on that question. But one guide runs through the cases, that is, that unless the express phraseology prohibits, the contribution clause ought not to be so applied as to diminish the protection of assured. Richards on Insurance 463.

We have two problems, (1) the adjustment of the blanket clause to the separate

interests on account of the existence of specific by one and not by the other, and (2) when that is done, fix the proportion of the loss between the blanket and specific. When there are two assureds with a joint blanket on all and only one with specific on some, probably the same theory should apply as where one assured had a blanket on two locations and specific on one and the loss was on both locations. The authorities seem to favor a construction which would require the blanket to take care of that not under the specific before sharing with the latter. See Angelrodt & Booth v. Delaware Mutual Ins. Co., 31 Mo. 593; Deming v. Merchants' Cotton-Press & Storage Co., 90 Tenn. 306, 17 S.W. 89, 13 L.R.A. 518; Baltimore Fire Ins. Co. v. Loney, 20 Md. 20. The reasoning of other authorities, cited above, also seem plausible, that when a single assured has a blanket on two locations and specific at one of them, and fire loss covers all, the blanket should be first used where the specific does not apply.

Moreover, it is apparent to us that the terms of the policy and situation of assureds and their respective rights and interests sought to be protected, known to Pearl's agent, require such a construction of the policy as will permit their separate claims to be separately computed, not pooled as one claim. We cannot believe that the parties thought that a loss by the warehouse company would be depleted on account of specific insurance by the mill and gin company. They knew of the separate interest of each, and probably of the nature of the specific insurance existing. If not, they knew that a different provision was made when there was such other insurance, whether then existing or not. They knew that each had the right to have such separate from the other, and when so a different status would exist. The specific insurance, in order to be so classed, should be only such as covers the separate property of the separate assured, unless their interests are pooled. Lubetsky v. Standard Fire Ins. Co., 217 Mich. 654, 187 N.W. 260; Lesure Lumber Co. v. Mutual Fire Ins. Co., 101 Iowa 514, 70 N.W. 761. This necessitates a separate computation of Pearl's liability to each assured on different bases. We must determine the formula applicable to each.

■ A coinsurance clause is based on the ratio which the amount of the limit of liability bears to the amount of the value covered. An adjustment of a blanket with a specific policy is dependent upon the terms of the proration clause in the blanket, when its liability is in question.

We must first determine to what extent the blanket applies to each item of the loss, where the specific does not cover all the items. When so, its proportionate amount of the loss with the specific, where they both cover on, is controlled by its proration clause. The formula is of course dependent upon the terms of that clause in the blanket applicable where the specific also is in force.

The coinsurance clause in three is clear and without ambiguity, and so is the proration clause in amended six. The former is as the amount of the limit of liability is to the amount of the total value; the latter is that the amount of Pearl at risk, at the location of the fire covering on the same property on which specific covers, and the amount of such specific shall prorate the loss, not exceeding the maximum; similar to the concurrent clause in lines ninety-six to one hundred, supra. See Indiana Lumbermen's M. Ins. Co. v. Fair, 5 Cir., 109 F.2d 607, Jan. 30, 1940.

' The Warehouse Company.

■ This company was an assured with certain cotton lost within the blanket of Pearl. It had no specific insurance. So that the proportion formula of amended six can have no field of operation. And in finding the limit of liability and amount at risk there is nothing to deduct from the total value covered. Therefore, there is no field of operation for the proration clause of amended six, or its other features. And when there is no other insurance whose amount is to be deducted from the total value insured to fix the limit of liability, that limit is such total value, not exceeding $110,000. The total value of the warehouse so covered was $103,907.15, so that figure is both the limit of liability and the value of the cotton covered so far as the warehouse company is concerned. So that each bears the full proportion of the other under clause three. There is no formula to set up, since under the clear terms of clause three the amount of Pearl's liability for that loss is one hundred per cent. of it, or $\frac{103907.15}{103907.15}$ of it. The loss was $86,308.01, all to be borne by Pearl.

This was the judgment of the trial court, and we think it is correct.

The Mill and Gin Company.

 It sustained a loss of $33,944.95, and had $60,000 of specific insurance on the lost property, and $60,000 on property not lost,—a total value insured of $145,-644.64. We bear in mind the dual purpose of specific insurance under amended six: (1) to fix the amount at risk, and (2) to sustain a proportionate share of the loss. The total value of the property of this assured covered on by the policy ($145,644.64) should be depreciated by the total amount of the specific insurance held by this company ($120,000), leaving $25,644.64, but this figure cannot exceed the maximum prescribed by the policy. That maximum is $110,000 for both assureds.

The Pearl policy should be first applied to that feature of the loss not specifically otherwise covered, as we have shown. That is to the warehouse company of $86,-308.01, leaving a balance of that maximum to apply to the mill and gin company of $23,691.59. ·So that the above amount of $25,644.64 is automatically reduced to $23,-691.59. This with $60,000, the amount of the specific insurance on this particular cotton, should proportionately bear the loss of $33,944.95, or $\frac{23691.59}{83691.59} \times 33944.95 = \$9,609.11$, as the amount of Pearl's liability to the mill and gin company. This was the judgment of the trial court, which we think is correct.

In separating the interests of the assureds here, thereby tacitly approving a separate suit by each, we are not going beyond well-established principles. It is often true that insurance policies and other contracts are so interpreted as that more than one beneficiary of its provisions may maintain separate suits on the same contract for the same loss. The theory is that the other party to it has virtually consented to that status. It is always so in fire insurance policies, which by their terms confer on different persons separate and distinct claims and interests in a loss. Capital City Ins. Co. v. Jones, 128 Ala. 361, 30 So. 674, 86 Am.St.Rep. 152; Gunn v. Palatine Ins. Co., 227 Ala. 245, 149 So. 672.

This is true as to contracts not of insurance. Burton v. Henry, 90 Ala. 281, 7 So. 925.

 It is also clear to us that to the extent that clause three as printed conflicts with clause six as amended, the latter should take precedence. Two well-known rules of construction lead to this result. One is that when there is added to a printed form a written or typewritten clause, it should be considered as superseding those in conflict which are printed in the form. Tubb v. Liverpool & L. & G. Ins. Co., 106 Ala. 651, 17 So. 615; Rice Oil Co. v. Atlas Assur. Co., 9 Cir., 102 F.2d 561; Deutschle v. Wilson, 8 Cir., 39 F.2d 406; Independence Indemnity Co. v. Jones & Son, 9 Cir., 64 F.2d 312.

Another is that in a policy of insurance, prepared by the insurance company, if there is an ambiguity or there are conflicting terms, it should have that construction most favorable to assured if reasonable. North Carolina Mutual Ins. Co. v. Terrell, 227 Ala. 410, 150 So. 318, 89 A.L.R. 1459; Continental Casualty Co. v. Ogburn, 175 Ala. 357, 57 So. 852, Ann.Cas.1914D, 377; Sovereign Camp, W. O. W. v. Miller, 231 Ala. 336, 164 So. 742; Equitable Life Assur. Society v. Hill, 230 Ala. 505, 161 So. 800.

The judgment of the trial court is in full accord with our views, and is therefore affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.

On Rehearing.

FOSTER, Justice.

Application for rehearing overruled.

GARDNER, C. J., and THOMAS and BOULDIN, JJ., concur.