BERGSTROM PAPER CO. v. CONTINENTAL INS. CO. OF CITY OF NEW YORK et al.

Civ. A. No. 4245.

District Court, E. D. Wisconsin.

Jan. 19, 1948.

See, also, 7 F.R.D. 548.

Ray C. Dempsey and Bouck, Hilton & Dempsey, all of Oshkosh, Wis., for plaintiff.

H. O. Wolfe and Wolfe, O'Leary & Kenney, all of Milwaukee, Wis., for defendant Continental.

Henry S. Reuss and Quarles, Spence & Quarles, all of Milwaukee, Wis., for defendant Hartford.

DUFFY, District Judge.

On November 24, 1945, an explosion occurred in the power house of plaintiff's plant. In this action plaintiff alleges that the two insurance company defendants are liable to it pursuant to the terms of policies of insurance issued by them which were in full force and effect on the date of the explosion. The policy issued by Continental was a fire insurance policy with extended coverage including explosions. Under Hartford's policy it was liable for loss to property of plaintiff directly damaged by a "sudden and accidental tearing asunder caused by pressure of steam, water, or other liquids" to an "object." "Object" was defined to include piping and fittings, but did not include the feed water heater. Upon the trial plaintiff and Continental introduced evidence to show that the explosion first occurred in the fittings of the suction line which extended from the bottom of the feed water heater down to the pumps. Hartford's witnesses contended that the explosion first occurred in the feed water heater.

The issues were submitted to the jury upon a special verdict and the jury answered as follows:

"1. Were the cast iron fittings (Exhibits Nos. 14, 15, and 16) and the cast iron

flanges (Exhibits Nos. 17 and 18) a part of the suction line in plaintiff's power plant on November 24, 1945? Answer: Yes.

"2. Did the cast iron fittings in the suction line between the feed water heater and the boiler feed pumps break or tear asunder as a result of internal pressure? Answer: Yes.

"3. If you answer Question 2 'Yes,' then answer this question. Did such breaking or tearing asunder of such cast iron fittings take place prior to the explosion of the feed water heater? Answer: Yes.

"4. If you answer Question 3 'Yes,' then answer this question. Was the breaking or tearing asunder of the cast iron fittings in the suction line the proximate cause of the explosion of the feed water heater? Answer: Yes.

"5. Was the explosion in the plaintiff's power house the proximate cause of the damage to the turbine condenser? Answer: Yes."

Defendant Hartford moves to have the verdict set aside and for judgment in accordance with its motion made at the trial for a directed verdict or, in the alternative, for a new trial. Plaintiff moves on the verdict for a joint and several judgment against the defendants in the sum of $77,008.59.

In support of its motion for a new trial Hartford claims that the jury was prejudiced by certain comments by counsel for Continental at the beginning of his argument to the jury when the following occurred:

"Mr. Wolfe: Now, I am not here just merely as a sort of a Santa Claus. We have got a pretty selfish interest to the extent of one-half of the physical damage. But, ladies and gentlemen of the jury, we do not have in our policy, and that is conceded, any coverage on the so-called use and occupancy, which is damage resulting from the interruption of business.

"Mr. Grubb: If the court please, I am going to object to that argument. It has nothing to do with the questions submitted.

"The Court: Well, I think we need not go into it, Mr. Wolfe. Part of your policy doesn't cover the loss which they would sustain if the plaintiff's position is maintained and the Hartford Company would have to pay it, but who is going to pay in the end, if anybody, is up to the court. I am going to submit to the jury the questions of fact, and I think we will confine ourselves to that.

"Mr. Wolfe: I don't want to argue it any further, except also under our policy there is no coverage for third-party liability, if there is any liability to third parties.

"Now maybe there is some confusion in the minds of the jury as to just what this is all about here as far as the Hartford policy is concerned and what it includes and what it excludes in so far as objects are concerned. * * *

" * * * Now, maybe it is somewhat a little difficult to follow what it does and does not include, but it is admitted here on this Exhibit 1 that the piping, which we call the pressure piping from the two pumps to the boilers—that is definitely included; also from the pumps to the feed water heater. The suction line is definitely included, and then when you get up to the feed water heater it is included."

Hartford's counsel urges that the jury was thus apprised of the effect of its answers to the special verdict and asserts as proof of the alleged prejudice of the jury that it deliberated scarcely an hour before agreeing upon a verdict.

My notes show that the case was submitted to the jury at 4:50 p. m. and that the jury returned its verdict at 8 p. m. During that interval the jurors were taken out for a meal, which customarily takes about an hour's time. It is also probable that the verdict was agreed upon prior to the time when it was reported in court. Hence it is quite likely that the jury did not deliberate more than an hour and a half before reaching its verdict.

Most of the testimony was given by expert witnesses. For four days the jury had heard the witnesses called by the plaintiff and by Continental testify that the explosion first occurred in the fittings of the suction pipe. They also heard the testimony of witnesses presented by Hartford that the explosion first occurred in the feed

water heater. Unless the members of the jury were very stupid (which they were not), they could not help comprehending the significance of the contentions of the various parties to this lawsuit. Also, when arguing the case to the jury, counsel for both plaintiff and Continental repeatedly urged that the questions in the verdict be answered "Yes," while counsel for Hartford argued to the contrary.

█ It is of course improper to inform the jury of the effect of its answers upon any judgment to be rendered in the case, but it is naive indeed to think that the average jury called upon to answer questions in a special verdict does not have some rather definite ideas as to what result their answers will effect.

In this case I instructed the jury as follows: "In order to determine the liability, if any, on these two policies, I am submitting to you a special verdict which consists of a number of questions which you are asked to answer. Your answers to these questions will constitute your verdict. You are to answer the questions solely upon the evidence received on this trial, and you are to consider the evidence in the light of the court's instructions. *You should not consider whether your answers to the questions will be favorable to one party or the other, nor with what the final result may be.* Your duty is to find the facts, and upon those facts it is the duty of the judge to render the proper judgment."

█ A case of this kind cannot be tried before a jury in a vacuum. In order to understand the issues, the jury must necessarily know something of the background and the setting of the lawsuit. Here both policies of insurance had been received in evidence. The issues could have been submitted upon a general verdict, or a general verdict accompanied by interrogatories upon one or more issues of fact, Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, or upon a special verdict, Rule 49(a), F.R.C.P. If either of the first two alternatives had been adopted by this court the jury would have been required to decide whether Continental and Hartford both were liable under their policies or whether Continental alone was lia-

ble for damages. Under all the circumstances and considering the instructions given by this court, I conclude that the aforementioned remarks of counsel for Continental did not prejudice the jury so as to require a new trial, and Hartford's motion for a new trial must be denied.

█ In support of Hartford's motion for judgment notwithstanding the verdict, counsel argues that plaintiff has failed to show that its property was "directly damaged" by the explosion of an insured object. Admittedly most of the damage was done in the room where the feed water heater was located. Hartford argues that it is not responsible for such damage but only for that "directly damaged" by the explosion of the cast iron fittings in the room below. Such a narrow construction of the terms of Hartford's policy cannot be sustained. The testimony showed that all of the explosions occurred within less time than one second. The jury found that the explosion of the cast iron fittings in the suction line was the proximate cause of the explosion of the feed water heater. There was no appreciable interval between the explosions and it is my conclusion that Hartford is liable for all damage that might be traceable to the explosion of the feed water heater.

█ Hartford further argues that the verdict cannot stand because it rests upon speculation and conjecture. The issue as to which object first exploded was peculiarly one for expert testimony. Plaintiff's experts testified that the cast iron fittings exploded first; Hartford's experts contended that the feed water heater exploded first. Each of the experts was highly qualified to testify. The tests, formulas, and other elements were within the field of expert knowledge. Merely because two groups of experts do not agree as to the situs of the first explosion does not relegate the decision reached to mere conjecture. Hartford offered the same type of testimony as plaintiff and Continental. If the jury had agreed with the contentions of Hartford's experts, I feel quite certain that Hartford's counsel would not be here arguing that the jury's decision was based on conjecture.

It was stipulated that plaintiff's total property damage was $77,008.59. Included in this sum was an item of $1,814.40 which was covered by a policy issued by the Fidelity and Casualty Company, as well as by the polices of Continental and Hartford.

It is Hartford's contention that under its policy, to use its own language, it is liable only for the portion of the joint loss that the amount which would have been payable under its policy on account of said loss, had no other insurance existed, bears to the combined total of said amount and the whole amount of such other valid and collectible insurance. As Continental's fire insurance policy had a limit of $400,000 Hartford works out the following formulas:

$37,597.09; and Continental, Hartford, and Fidelity and Casualty should each pay $604.80.

Hartford's policy contained a use and occupancy clause by which it agreed to pay plaintiff $1,000 daily for "total prevention of business" on its premises, and a part of this indemnity for "partial prevention of business." Plaintiff claims a loss of $19,109.92 under this provision. Hartford contends that Paragraph F of its use and occupancy endorsement required a certain type of notice which it claims was not given. Hartford also argues that in any event it cannot be liable under this clause for more than $1,000 per day.

In view of the stipulation between plaintiff and Hartford, it is not necessary to

(a) Hartford's apportionment of $75,194.19:

$$\frac{\text{Amount which would have been payable under Hartford's policy had no other insurance existed (\$75,194.19)}}{\text{\$75,194.19 plus whole amount of Continental's policy (\$400,000.00)}} \times \$75,194.19 = \$11,898.65$$

(b) Hartford's apportionment of $1,814.40:

$$\frac{\text{Amount payable under Hartford's policy had no other insurance existed (\$1,814.40)}}{\text{\$1,814.49 plus \$339,844.65 (remaining amount of Continental's \$400,000.00 policy) plus \$1,814.40 (Fidelity and Casualty's policy)}} \times \$1,814.40 = \$9.58$$

The policy issued by Continental also contains a pro rata clause. If Hartford's theory were adopted, it would leave the insured not fully indemnified. In the Employer's Cas. Co. v. Ragley, Tex.Civ.App., 197 S.W.2d 536, the court said (at page 539): "But every rule of construction in apportioning losses must yield to the right of the insured to be fully indemnified." In Pearl Assur. Co. v. Hartford Fire Ins. Co., 239 Ala. 515, 195 So. 747, the court said: "The contribution clause * * * should not be so applied as to diminish the protection of insured."

Properly construing the pro rata clauses, Continental and Hartford should each pay

rule on these contentions at this time. By the terms of the stipulation in the event that Hartford were found liable on its policy, plaintiff and Hartford were to negotiate and attempt to adjust the items in the schedule attached to the stipulation, and if agreement were not reached the matter was then to be submitted for determination to the court or to a master appointed by the court. Therefore, if the parties have not agreed as to said items within 30 days from the date of this opinion the plaintiff shall apply to the court for a final determination thereof. The court will at that time decide whether to refer the matters in dispute to a master.